UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ODYSSEY IMPORTS, INC.** | * | CIVIL ACTION NO.: |
| Plaintiff | * | |
| | * | SECTION: |
| versus | * | |
| | * | |
| **THE CHARTER OAK FIRE INSURANCE COMPANY** | * | JUDGE: |
| | * | |
| Defendant | * | MAGISTRATE: |

*******************************************************************************

## COMPLAINT AND REQUEST FOR JURY TRIAL

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Odyssey Imports, Inc., who files this Complaint against Defendant, The Charter Oak Fire Insurance Company, and alleges as follows:

### PARTIES

1.

Plaintiff, Odyssey Imports, Inc., is a corporation organized and existing under the laws of the State of Louisiana with a domicile address of 3219 Industrial Street, Alexandria, Louisiana 71301.

2.

Defendant, The Charter Oak Fire Insurance Company, is a foreign insurer that may be served with process through the Secretary of State, State of Louisiana, 3851 Essen Lane, Baton Rouge, Louisiana 70809.

## SUBJECT MATTER AND PERSONAL JURISDICTION

3.

This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00

4.

This Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activity in the State of Louisiana. At all relevant times Defendant transacted, solicited, and conducted business in Louisiana through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Louisiana.

## VENUE

5.

Venue in this case is proper in this Court pursuant to 28 U.S.C. § 1391, because this suit respects real and personal property located exclusively in Rapides Parish, Louisiana and the conduct, acts, and/or omissions upon which this cause of action is based occurred in Rapides Parish, Louisiana, which is completely and entirely within the United States District Court for the Western District of Louisiana

## FACTS

**A.    The COVID-19 Pandemic**

6.

On March 11, 2020 World Health Organization Director General Tedros Adhanom Ghebreyesus declared the COVID-19 outbreak a pandemic: "WHO has been assessing

this outbreak around the clock and we are deeply concerned both by the alarming levels of spread and severity, and by the alarming levels of inaction. We have therefore made the assessments that COVID-19 can be characterized as a pandemic."

7.

The clinical features of COVID-19 vary from asymptomatic forms to fatal conditions of severe respiratory failure that requires ventilation and support in an intensive care unit (ICU). Pneumonia has been the most frequent severe manifestation of COVID-19, with symptoms of fever, cough, dyspnea, and bilateral infiltrates on chest imaging. There are no specific treatments recommended for COVID-19, and no vaccine is currently available; so understanding the complexities of COVID-19 is ongoing.

8.

It has now been discovered by scientists that COVID-19 has several modes of transmission. Pursuant to a "Situation Report" released by the WHO, the virus can be transmitted through symptomatic transmission, pre-symptomatic transmission, or asymptomatic transmission. Symptomatic transmission refers to transmission by an individual who is experiencing symptoms associated with the virus who then transfers COVID-19 to another individual. Data from published studies provide evidence that COVID-19 is primarily transmitted from symptomatic people to other who are in close contact through respiratory droplets, by direct contact with infected persons, or by contact with contaminated objects and surfaces.

9.

The incubation period for COVID-19, which is the time between exposure to the virus (being infected) and symptom onset, average 5-6 days, however, it can be up to 14

days.  During this period, also known as the "pre-symptomatic" period, some infected persons can be contagious.  For that reason, transmission from pre-symptomatic case can occur before symptom onset.  Pre-symptomatic transmission still requires the virus to be spread through infectious droplets or touching contaminated surfaces.

10.

An individual who does not develop symptoms, an asymptomatic case of COVID-19, can still transmit the virus to another.  Though there are few documented cases reported, it does not exclude the possibility that it has or may occur.

11.

Not only is COVID-19 transmitted via human-to-human, but the WHO and scientific studies have confirmed that the virus can live on contaminated objects or surfaces.  According to a study by scientists documented in *The New England Journal of Medicine*, COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to two to three days on plastic and stainless steel.

12.

Another scientific study documented in the *Journal of Hospital Infection* found that human coronaviruses, such as SARS-Co-V and MERS-CoV can remain infectious on inanimate surfaces at room temperature for up to nine days.  At a temperature of 30 degrees Celsius or more, the duration of persistence is shorter.  Contamination of frequently touched surfaces is, therefore, a potential source of viral transmission. Though this study was not conclusive on COVID-19 itself, scientists are still grappling to understand this implication.

13.

On March 27, 2020, the Centers for Disease Control and Prevention ("CDC") released a report entitled *Public Health Responses to COVID-19 Outbreaks on Cruise Ships-Worldwide, February-March 2020*. The report detailed that during this time frame, COVID-19 outbreaks associated with three different cruise ship voyages caused over 800 confirmed cases and 10 deaths.  Of the individuals tested, a high proportion were found to be asymptomatic, which may explain the high rates on cruise ships.  What is interesting about this study though, is that COVID-19 was identified on a variety of surfaces in cabins of both symptomatic and asymptomatic infected passengers up to 17 days after cabins were vacated on the Diamond Princess cruise line, but before disinfection procedures had been conducted.  The CDC notes that more studies are required to understand the perpetuation of transmission, but what is clear is the uncertainty around COVID-19 and its implications for the lawful and safe functioning of a variety of businesses.

14.

Without a vaccine to protect against COVID-19, effective control of the outbreak relies on measures designed to reduce human to human and surface to human exposure. Recent information of the CDC's website provides that COVID-19 spreads when people are within six feet of each other or when a person comes in contact with a surface or object that has the virus on it.

15.

The secondary exposure of the surface to humans is particularly acute in places where the public gathers typically to socialize, eat, drink, shop, be entertained, and go for recreation.  This is why the CDC recommends that in viral outbreaks individuals who are

infected stay at home and those who are not sick engage in preventative measures such as constant hand washing and avoiding activities that would bring them into close proximity of people with the virus or surfaces where the virus may reside.  However, because these recommendations have proven ineffective to minimize the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing non-essential business establishments, including restaurants, bars, hotels, theaters, personal care salons, gyms, and schools, and mandating social distancing among the population.  This has caused the cancelation of sporting events, parades, and concerts, the closure of amusement parks, and substantial travel restrictions.  In addition, to conserve medical supplies, orders have been issued prohibiting the performance of non-urgent or non-emergency elective procedures and surgeries, forcing the suspension of operations at many medical, surgical, therapeutic, and dental practices.

16.

On March 11, 2020, Governor John Bel Edwards declared that a statewide public health emergency existed in Louisiana.  The emergency stemmed from a lack of hospital capacity and a shortage of vital medical and personal protective equipment that would be needed to treat patients with the most severe manifestation of symptoms from COVID-19.

17.

Fearing that Louisiana's health care capacity would soon be overrun, Governor Edwards issued a series of subsequent emergency proclamations and orders that closed schools, shuttered non-essential businesses, and ordered Louisiana residents to stay home.

18.

Plaintiff's business was closed on March 23, 2020 and since that date has been unable to operate in the ordinary course of business.

**B.     Defendant's All-Risk Commercial Insurance Policy**

19.

Plaintiff purchased from Defendant a Commercial Insurance Policy bearing Policy Number I-660-6J127645-COF-19, naming Plaintiff as the insured.  The Policy was purchased to cover Plaintiff's Alexandria, Louisiana based business that specializes in wholesale home decor.  The Policy provides insurance coverage for the period of July 1, 2019 to July 1, 2020.

20.

Plaintiff did not participate in the drafting or negotiating of the policy with Defendant.

21.

The Policy is an all-risk policy, insofar as it provides coverage for all risks unless the risk is specifically and clearly excluded or limited in the Policy.  Under an all-risk policy, the insured bears the burden of proving a loss under the terms of the Policy.  The insured does NOT bear the burden of proving the precise cause of the loss.  *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 430 (5th Cir. 1980).  "…[A]ll risk insurance arose for the very purpose of protecting the insured in those cases where difficulties of logical explanation or some mystery surround the loss..." *Id.*

22.

If an insurer denies coverage under an all-risk policy, the insurer bears the burden

of proving that the loss was caused by an excluded risk.  *Bayle v. Allstate Ins. Co.*, 615 F.3d 350 (5th Cir. 2010).  Any ambiguities in the policy must be resolved in favor of coverage for the insured.  *McAvey v. Lee*, 260 F.3d 359, 364 (5th Cir. 2001).

23.

The relevant all-risk Policy provides coverage, among other things, for: 1) Business Income, 2) Extra Expense, 3) Civil Authority, 4) Alterations and New Buildings, 5) Extended Business Income, 4) Interruption of Computer Operations, and 5) Delayed Net Income Loss.

**C.      Odyssey Imports, Inc.'s Loss/Claim Under The All-Risk Insurance Policy**

24.

Plaintiff has suffered and will continue to suffer a direct physical loss of and damage to its property because it has been unable to use the property for its intended purpose.

25.

Plaintiff's ongoing losses, including, but not limited to, Business Income, Extra Expense, Civil Authority, Extended Business, and Delayed Net Income Loss are covered under the relevant all-risk Policy.

26.

Plaintiff notified Defendant of its loss and made a claim under the all-risk Policy.

27.

By letter dated April 14, 2020, Defendant denied Plaintiff's claim alleging that the causes of Plaintiff's loss were excluded from coverage under the all-risk Policy.

## CAUSE OF ACTION – BREACH OF CONTRACT

28.

Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this complaint.

29.

Plaintiff maintains that Defendant's preceding conduct constitutes a breach of the contract as embodied by the aforementioned insurance policy.

30.

As a result of its misconduct, Defendant is liable to Plaintiff for all damages resulting from the breach.

## CAUSE OF ACTION – BAD FAITH

A.    **La. R.S. 22:1973**

31.

Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this complaint.

32.

Plaintiff maintains that Defendant "knowingly committed or performed" the following acts, thereby constituting a breach of the insurer's duties: (1) misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; and (2) failing to pay the amount of any claim due any person insured by the contract within sixty (60) days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

33.

As a result of Defendant's aforementioned conduct, Defendant is liable for any damages sustained as a result of the breach, including, but not limited to specific and general damages, attorneys' fees, and penalties. Such penalties include an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

**B.** **La. R.S. 22:1892**

34.

Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this complaint.

35.

Plaintiff maintains that Defendant's aforementioned conduct violated La. R.S. 22:1892 by Defendant's failure to provide Plaintiff payment within thirty (30) days after being provided satisfactory proof of loss by Plaintiff.

36.

As a result of its misconduct, Defendant is liable to Plaintiff for all damages occasioned by the breach, specific and general, as well as attorneys' fees, costs, interests, penalties as provided in La. R.S. 22:1892.

**C.** **La. C.C. art. 1997**

37.

Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this complaint.

38.

Plaintiff maintains that Defendant's aforementioned conduct violates La. Civil Code

art. 1997.

39.

As a result of its bad faith, Defendant is liable to Plaintiff for all damages, foreseeable or not, that a direct consequence of its failure to perform.

**REQUEST FOR JURY**

Plaintiff prays for a jury trial of all matters herein.

**PRAYER FOR RELIEF**

Plaintiff prays that after due proceedings are conducted and after a jury verdict in its favor that this Court enter judgment in its favor against Defendant for all damages discussed herein, including, but not limited to, all general, specific, equitable, and punitive relief which include but are not limited to costs, attorneys fees, penalties, and interest from the date of injury.

Respectfully submitted,

    s/Joseph E. Cain
**STEPHEN J. HERMAN (La. Bar No. 23129)**
**BRIAN D. KATZ (La. Bar No. 24137)**
**SOREN E. GISLESON (La. Bar No. 26302)**
**JOSEPH E. "JED" CAIN (La. Bar No. 29785)**
**JOHN S. CREEVY (La. Bar No. 30879)**
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024