IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

ODYSSEY IMPORTS, INC.,

*Plaintiff*,

v.

THE CHARTER OAK FIRE INSURANCE
COMPANY,

*Defendant*.

Case No. 1:20-cv-00542-DDD-JPM

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT**

Respectfully Submitted:

*/s/Seth A. Schmeeckle*
**Seth A. Schmeeckle, La. Bar No. 27076 (T.A.)**
**Nicole M. Babb, La. Bar No. 35032**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990
Facsimile: 504-310-9195
Email:  sschmeeckle@lawla.com
        nbabb@lawla.com

*Attorneys for The Charter Oak Fire Insurance Company*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     PROCEDURAL HISTORY AND ALLEGED FACTS .......................................... 3

        A.      This Lawsuit................................................................................................. 3

        B.      Contract Language At Issue ......................................................................... 4

III.    LEGAL STANDARDS ........................................................................................... 7

IV.     ARGUMENT ........................................................................................................... 9

        A.      Plaintiff Is Not Entitled to Civil Authority Coverage As a Matter of Law............. 9

                1.      Civil Authority Coverage Does Not Apply to Losses Caused By Or
                        Resulting from a Virus.................................................................... 10

                2.      Civil Authority Coverage Does Not Apply Because the Complaint
                        Fails to Allege That An Action of Civil Authority Prohibited Access
                        to Its Property................................................................................. 11

                3.      Plaintiff Does Not Allege That Any Action of Civil Authority Was
                        Taken In Response to Direct Physical Loss to Property Other Than
                        Insured Premises From A Covered Cause of Loss ............................. 14

        B.      The Policy's Business Income, Extra Expense, Extended Business Income
                and Delayed Net Income Coverages Do Not Apply as a Matter of Law
                Because the Complaint Fails to Allege Direct Physical Loss of or Damage
                to Property at Insured Premises That Was Caused by or Resulted From a
                Covered Cause of Loss ............................................................................... 15

                1.      Plaintiff Alleges That Its Losses Were Caused by Coronavirus,
                        Which Is Not a Covered Cause of Loss ........................................... 16

                2.      The Complaint is Also Deficient In Its Failure to Plead That
                        Plaintiff's Property Experienced Any "Direct Physical Loss of or
                        Damage To" Property At Insured Premises ...................................... 17

        C.      Plaintiff's Bad Faith Claim Should be Dismissed Due to Its Failure to Plead
                a Viable Claim for Breach of the Insurance Contract ..................................... 22

V.      CONCLUSION....................................................................................................... 24

i

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*,
763 N.Y.S.2d 243 (N.Y. App. Div. 2003)……………………………………….…13

*730 Bienville Partners, Ltd. v. Assurance Company of America*,
No. CIV.A. 02-106, 2002 WL 31996014 (E.D. La. Sept. 30, 2002),
*aff'd*, 2003 WL 21145725, 67 F. App'x 248 (5th Cir. 2003)………………………....11, 12

*Abell Corp. v. Northland Ins. Co.*,
No. 96-0717, 1996 WL 481072 (E.D. La. Aug. 23, 1996)……………………………...23

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
308 F. Supp. 2d 331 (S.D.N.Y. Mar. 12, 2004)……………………………………..…...13

*Aflac, Inc. v. Chubb & Sons, Inc.*,
260 Ga. App. 306 (Ga. App. 2003)………………………………………………..…...18

*App v. Zurich Assur. Co. of America*,
No. CIV.A. 07-8717, 2008 WL 4399385 (E.D. La. Sept. 23, 2008)……………….. 11, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)………………….…………………………………………………7

*Backroads Corp. v. Great Northern Ins.*,
No. C 03-4615 VRW, 2005 WL 1866397 (N.D. Cal. Aug. 1, 2005)……………………12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570 (2007)……………………………………........................................7

*Burk Prop. Investments, LLC v. Illinois Union Ins. Co.*,
No. CV 19-1787, 2020 WL 1864850 (E.D. La. Apr. 13, 2020)…………………………11

*Clausen v. Fidelity & Deposit Co.*,
660 So. 2d 83 (La. App. 1 Cir. 1995)…………………………………………………..23

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000)……………………………………………………………8

*Commstop v. Travelers Indem. Co. of Conn.*,
No. CIV.A. 11-1257, 2012 WL 1883461 (W.D. La. May 17, 2012)……………………..12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
    636 F.3d 683 (5th Cir. 2011)………………………………………………………..15

*Dousay v. Allstate Ins. Co.*,
    741 So. 2d 750 (La. App. 3 Cir. 1999)…………………………………………..23

*Edwards v. Allstate Prop. & Cas. Co.*,
    No. CIV.A. 04-2434, 2005 WL 221558 (E.D. La. Jan. 27, 2005)………………………23

*Grigsby & Assocs., Inc. v. City of Shreveport*,
    294 F. Supp. 3d 529 (W.D. La. 2018)……………………………………………8

*Hanberry v. Chrysler Capital*,
    No. CV 20-246, 2020 WL 2219244 (E.D. La. May 7, 2020)……………………………13

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*,
    486 S.E.2d 249 (N.C. App. 1997)……………………………………………19, 21

*Herr v. Forghani*,
    161 Wash. App. 1037, 2011 WL 1833829 (2011) (unpublished)………………………22

*Home Ins. Co. of Illinois v. Nat'l Tea Co.*,
    588 So. 2d 361 (La.1991)…………………………………………………..21

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
    759 F. Supp. 2d 822 (E.D. La. 2010)……………………………………..18, 20

*In Re Katrina Canal Breaches*,
    495 F.3d 191 (5th Cir. 2007)………………………………………...3, 8

*In re Katrina Canal Breaches Consol. Litig.*,
    No. CIV.A.05-4182, 2008 WL 4185869 (E.D. La. Sept. 8, 2008)………………………13

*In Re Mastercard Intern. Inc., Internet Gambling Litigation*,
    132 F. Supp. 2d 468 (E.D. La. 2001), *aff'd*, 313 F. 3d 257 (5th Cir. 2002)………………7

*J. O. Emmericbuttsh & Assocs., Inc. v. State Auto Ins. Cos.*,
    No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576 (S.D. Miss. Nov. 19, 2007)………21, 22

*Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*,
    20 F.3d 1362 (5th Cir. 1994)………………………………………………8

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Kean, Miller, Hawthorne, D'Armond McGowan & Jarman, LP v. Nat'l Fire Ins. Co.*,
    No. CIV.A. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007)..........................12

*Mangerchine v. Reaves*,
    63 So. 3d 1049 (La. App. 1 Cir. March 25, 2011)..........................................18

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
    187 Cal. App. 4th 766 (Ct. App. 2d Dist. 2010)..........................................18

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014)..................................................19, 22

*Nguyen v. St. Paul Travelers Inc. Co.*,
    No. CIV.A. 06-4130, 2007 WL 3275133 (E.D. La. Nov. 5, 2007)............................23

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,
    No. 2:12-CV-00245-WCO, 2014 WL 12480022 (N.D. Ga. May 23, 2014)................21

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
    No. 1:03-CV-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004)...............12, 15

*Pentair, Inc. v. American Guar. and Liab. Ins. Co.*,
    400 F.3d 613 (8th Cir. 2005)...........................................................21

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005)...............................................12, 19

*Phillips v. Patterson Ins. Co.*,
     813 So. 2d 1191 (La. App. 3 Cir. 2002)................................................23

*Riley v. Transamerica Ins. Group Premier Ins. Co.*,
    923 F. Supp. 882 (E.D. La. 1996).......................................................23

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
    302 A.D.2d 1 (N.Y. App. Div. 2002)................................................19, 21

*Scottsdale Ins. Co. v. TL Spreader, LLC*,
    No. 6:15CV2664, 2017 WL 4779575 (W.D. La. Oct. 20, 2017)...........................24

*Sher v. Lafayette Ins. Co.*,
    988 So. 2d 186 (La. 2008)...............................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
  No. 20 Civ. 3311 (VEC), tr. at 5, 15 (S.D.N.Y. May 14, 2020)…………………………..19

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
  No. CIV.A. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008)…………………15

*Southern Hospitality, Inc. v. Zurich American Ins.*,
  393 F.3d 1137 (10th Cir. 2004)……………………………………………………………11

*Trinity Indus., Inc. v. Ins. Co. of N. Am.*,
  916 F.2d 267 (5th Cir. 1990)………………………………………………………………17

*Vincent v. State Farm Fire & Cas. Co.*,
  No. CV 19-14078, 2020 WL 2495815 (E.D. La. May 14, 2020)………………………24

*Yount v. Lafayette Ins. Co.*,
  4 So. 3d 162  (La. App. 4 Cir. 2009)……………………………………………………....11

**Statutes**

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………..7

La. Civ. Code  art. 1997……………………………………………………………………24

La. Civ. Code art. 2045……………………………………………………………………8, 11

La. Civ. Code art. 2046……………………………………………………………………9, 11

La. Civ. Code art. 2047……………………………………………………………………..8

La. Civ. Code art. 2050……………………………………………………………………..8, 20, 21

La. R.S. 22:1892……………………………………………………………………23, 24

La. R.S. 22:1973……………………………………………………………………23, 24

**Treatises**

10A Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, *Couch on Insurance* § 148:46 (3d ed. Dec. 2019 Update)…………………………………………..17

**NOW INTO COURT**, comes Defendant The Charter Oak Fire Insurance Company ("Charter Oak"), which respectfully submits this Memorandum in Support of its Motion to Dismiss the Complaint, seeking dismissal of all claims asserted against it by Plaintiff Odyssey Imports, Inc. ("Plaintiff" or "Odyssey Imports"), with prejudice and at Plaintiff's costs, for the reasons set forth below:

## I.   INTRODUCTION

The COVID-19 pandemic has affected the public and most businesses throughout the country in unprecedented ways. But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

Plaintiff Odyssey Imports specializes in wholesale home décor and operates its business from two warehouse locations in Alexandria, Louisiana. Plaintiff alleges in its Complaint that it is entitled to insurance coverage for business income losses and expenses allegedly incurred when Governor John Bel Edwards issued certain emergency proclamations to combat the spread of SARS-CoV-2 (also known as "Coronavirus"), which causes COVID-19.[1] But in making this plea, Plaintiff ignores the material terms of the Charter Oak policy, foremost among them an explicit exclusion of *any* type of coverage for *any* "loss or damage resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

In addition to ignoring the case-dispositive virus exclusion, Plaintiff has not pled, and cannot allege, the facts necessary to establish its entitlement to any payment under the Policy's Civil Authority, Business Income, Extra Expense, Extended Business Income, or Delayed Net

---

[1] Other similar COVID-19-related suits seeking coverage for business income losses have been filed by other plaintiffs against other insurers in this Court, and similar cases are pending in numerous other federal and state courts across the country. Two motions for transfer and coordination or consolidation under 28 U.S.C. § 1407 have been filed with the Judicial Panel on Multidistrict Litigation ("JPML") in *In re: COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942. Defendant intends to oppose the motions for transfer and coordination or consolidation. The JPML hearing on the motions is scheduled for July 30, 2020.

Income coverages. Specifically, the Breach of Contract claim should be dismissed for at least the following reasons:

*First*, the Complaint fails to allege facts supporting any of the requirements of Civil Authority coverage. Specifically, Plaintiff does not allege that the Governor took any action that "prohibited access" to Plaintiff's Louisiana properties (he did not). Nor does the Complaint plead facts suggesting that the Governor issued any emergency proclamation in response to the effects of physical damage occurring at property other than at Plaintiff's premises. To the contrary, the Complaint alleges, and the relevant proclamations confirm, that Governor Edwards acted out of fear that COVID-19 patients would overwhelm Louisiana's health care system, and in order to curb the spread of Coronavirus.

*Second,* to the extent Plaintiff claims entitlement to coverage under the Policy's Business Income, Extra Expense, Extended Business Income, or Delayed Net Income Loss coverages, the Complaint fails to plead facts supporting an essential requirement of each of those coverages: the existence of direct physical loss of or damage to property at insured premises caused by or resulting from a Covered Cause of Loss. Plaintiff's allegation that Coronavirus and Governor Edwards' proclamations left it unable to use its property for its intended purpose is belied by the text of the proclamations. But even if the proclamations supported that allegation, a loss of use of property, without an accompanying *physical* alteration of the property, does not constitute "direct physical loss or damage" under Louisiana law.

Because the Complaint does not plead facts sufficient to support Plaintiff's entitlement to benefits under the Policy, there is no breach of contract. And again, even if Plaintiff could have pled these factual requirements for coverage, Plaintiff's alleged financial losses—which clearly

result from Coronavirus—would still be *expressly excluded* by the virus exclusion. Accordingly, the claim for Breach of Contract should be dismissed with prejudice.

Finally, Plaintiff's cause of action for Bad Faith fails and should be dismissed with prejudice because Louisiana law is clear that a claim for bad faith will not lie in the absence of insurance coverage, and because Plaintiff has not pled facts supporting a plausible claim that Charter Oak violated any statute.

## II.     PROCEDURAL HISTORY AND ALLEGED FACTS

### A.     This Lawsuit

Plaintiff commenced this action against Charter Oak on April 30, 2020. (ECF No. 1) ("Compl."). Plaintiff is a Louisiana corporation that operates a wholesale home décor business from its base in Alexandria, Louisiana. (Compl., ¶¶ 1, 19). The Complaint alleges that Plaintiff purchased a commercial insurance policy from Charter Oak bearing policy number I-660-6J127645-COF-19 (the "Policy"), for the policy term of July 1, 2019 to July 1, 2020. (*Id.*, ¶ 19).[2] It further alleges that the Policy insures Plaintiff for its ongoing business losses stemming from the global COVID-19 pandemic and actions taken by Governor Edwards to combat the spread of Coronavirus. (*Id.*, ¶¶ 16-17). According to the Complaint, those actions included the Governor's declaration of a statewide public health emergency in Louisiana on March 11, 2020, and unspecified "subsequent emergency proclamations that closed schools, shuttered non-essential businesses, and ordered Louisiana residents to stay home." (*Id.*). The Complaint alleges that Plaintiff temporarily closed its business on March 23, 2020, and sustained a loss of income and incurred expenses that fall within the Policy's Business Income, Extra Expense, Civil Authority,

---

[2] The Court may properly consider the insurance policy referenced throughout the Complaint, even though it was not physically attached to the Complaint. *See In Re Katrina Canal Breaches,* 495 F.3d 191, 205 (5th Cir. 2007). A certified copy of the Policy issued to Plaintiff is attached hereto as <u>Exhibit A</u>.

Extended Business Income, and Delayed Net Income Loss provisions. (*Id.*, ¶¶ 18, 19, 25). Charter Oak's failure to pay those for those alleged losses forms the basis of Plaintiff's claims for Breach of Contract and Bad Faith.

**B.      Contract Language At Issue**

Plaintiff purchased a Commercial Insurance policy from Charter Oak, a type of policy for businesses, such as wholesalers, that insures Plaintiff's buildings and business personal property (such as office equipment and stock) against a Covered Cause of Loss, such as a fire or windstorm. For example, in the event of a fire that requires a suspension of Plaintiff's business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations caused by the fire damage, and occurs during the "period of restoration"—while the repairs are being made. The Policy's Business Income (And Extra Expense) Coverage Form provides, in relevant part:

**A.      COVERAGE**

**1.      Business Income**

                              \*      \*      \*

**c.**      We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be <u>caused by direct physical loss of or damage to property at premises which are described in the Declarations</u> and for which a Business Income Limit of insurance is shown in the Declarations. The <u>loss or damage must be caused by or result from a Covered Cause of Loss</u>.

**2.      Extra Expense**

                              \*      \*      \*

**b.**      Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss</u>.

4

(Exhibit A, pg. 52 of 162) (emphasis added). The term "Covered Causes of Loss" is defined in the Policy's Cause of Loss—Special Form to mean "RISKS OF DIRECT PHYSICAL LOSS unless the loss is . . . [e]xcluded[.]" (*Id.*, pg. 63 of 162).

In the provision entitled "Civil Authority," which is the focal point of the Complaint, coverage for Business Income and Extra Expense resulting from a "Covered Cause of Loss" is extended as follows:

> **a.    Civil Authority**
>                    *        *        *
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and the reasonable and necessary Extra Expense you incur caused by the action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.*, pg. 53 of 162) (emphasis added).

The Policy's Business Income (And Extra Expense) Coverage Form also features an Additional Coverage for "Extended Business Income" that provides, in relevant part:

> **c.    Extended Business Income**
>
> (1)    Business Income Other Than "Rental Value"
>
>        If the necessary "suspension" of your "operations" produces a Business Income loss payable under this [Property] Coverage Part, we will pay for the actual loss of Business Income you incur during the period that:

      (a)      Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

      (b)      Ends on the earlier of:

            (i)      The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

            (ii)      Unless otherwise stated in the Declarations or by endorsement, 60 days after the date determined in **(1)(a)** above.

            \*      \*      \*

<u>Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss.</u>

(*Id.*, pg. 54 of 162) (emphasis added).

The Policy also provides coverage for "Delayed Net Income Loss" according to the following terms:

      **e.**      **Delayed Net Income Loss**

      We will pay for the actual loss of Net Income…you sustain due to the "suspension" of your "operations" resulting in a loss in the value of production which occurs beyond the "period of restoration" and Extended Business Income. We will only pay under this Additional Coverage if:

      **(1)**      The Delayed Net Income Loss is <u>caused by direct physical loss or damage to property</u> at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.

      **(2)**      The loss or damage is <u>caused by a Covered Cause of Loss</u>.

            \*      \*      \*

(*Id.*, pg. 55 of 162) (emphasis added).

Also important here is the endorsement to the Policy entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which expressly "applies to all coverage under all forms and

endorsements that comprise this [Commercial Property] Coverage Part or Policy, including but not limited to forms or endorsements that cover . . . business income, extra expense, rental value or action of civil authority." The exclusion concisely states in plain terms that:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(*Id.*, pg. 149 of 162) (emphasis added).

As demonstrated below, Plaintiff's factual allegations cannot satisfy the requirements for coverage under the Civil Authority, Business Income, Extra Expense, Extended Business Income, or Delayed Net Income Loss provisions, and the virus exclusion unambiguously precludes coverage on the facts alleged.

## III.   LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *In Re Mastercard Intern. Inc., Internet Gambling Litigation,* 132 F. Supp. 2d 468, 476 (E.D. La. 2001), *aff'd,* 313 F. 3d 257 (5th Cir. 2002) (observing that, when reviewing a motion to dismiss, a district court does not have to "accept 'legal conclusions,' 'unsupported conclusions,' 'unwarranted references,' or 'sweeping legal conclusions cast in the form of factual allegations'") (citations omitted).

When reviewing a motion to dismiss for failure to state a claim, a district court must consider the contents of the pleading and the attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, the court also should consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to its claim, and matters of which the court may take judicial notice. *See In Re Katrina Canal Breaches,* 495 F.3d 191, 205 (5th Cir. 2007); *Grigsby & Assocs., Inc. v. City of Shreveport*, 294 F. Supp. 3d 529, 537 (W.D. La. 2018). Finally, where, based on the facts pleaded, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper. *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

Louisiana law governs the interpretation of the insurance policy at issue here.[3] "An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Katrina Canal Breaches*, 495 F.2d at 206. This Court's role is to determine the parties' common intent from the language used in the Policy. La. Civ. Code art. 2045; *see also Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 192 (La. 2008). The words in the Policy must be given their "generally prevailing meaning," and "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code arts. 2047, 2050. When the words

---

[3] "In diversity cases . . . federal courts must apply state substantive law. . . . In determining which state's substantive law controls, the court applies the choice-of-law rules of the forum state." *Katrina Canal Breaches*, 495 F.2d at 206 (citations omitted). Louisiana's substantive law controls in actions concerning the interpretation of insurance policies issued to policyholders in Louisiana for property located in Louisiana. *See id.* Here, the Policy was issued to Odyssey Imports at an address in Alexandria, Louisiana, and the two insured locations that are the subject of this lawsuit—warehouses located at 3219 Industrial Street and 4600 Richard Street—are both in Alexandria, Louisiana. (Compl., ¶ 19 ("The Policy was purchased to cover Plaintiff's Alexandria, Louisiana, based business that specializes in wholesale home décor."); <u>Exhibit A</u>, pg. 15 of 162 (Location Schedule)). The Complaint does not allege any loss, damage or expense involving Plaintiff's retail home furnishing center located in High Point, North Carolina. (*See id.*).

"are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.

## IV.   ARGUMENT

The allegations of the Complaint demonstrate that Plaintiff can prove no set of facts that would entitle it to coverage under the Policy. The Complaint seeks insurance coverage for financial losses stemming from a deadly virus and government orders issued to combat its spread. Yet, the Policy contains an explicit exclusion that applies to all forms of business interruption coverage for *any* "loss or damage resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Because the virus exclusion bars coverage for Plaintiff's alleged losses, the Complaint fails to state a cognizable cause of action and should be dismissed.

### A.   Plaintiff Is Not Entitled to Civil Authority Coverage As a Matter of Law

Plaintiff's claim of entitlement to Civil Authority appears to be based upon unspecified "emergency proclamations and orders" issued by Governor Edwards in response to the COVID-19 pandemic. (Compl., ¶ 17). Pursuant to the Policy's express terms, an "action of civil authority" gives rise to coverage if, among other things: (1) "a Covered Cause of Loss causes damage to property other than property at the described premises;" (2) the action of civil authority is taken in response to dangerous physical conditions resulting from that damage, or continuation of the Covered Cause of Loss, or to enable a civil authority to have unimpeded access to the damaged property; and (3) the action of civil authority prohibits access to the described premises. Plaintiff is not entitled to Civil Authority coverage, as a matter of law, because the Policy excludes all loss—including the financial losses alleged by Plaintiff—that is caused by or results from a virus. Moreover, the Complaint fails to allege any facts sufficient to satisfy the elements of Civil Authority coverage.

### 1.    Civil Authority Coverage Does Not Apply to Losses Caused By Or Resulting from a Virus

Plaintiff alleges that Governor John Bel Edwards issued certain proclamations and orders in response to the Coronavirus pandemic and because of the fear "that Louisiana's health care capacity would soon be overrun" by critical COVID-19 patients. (Compl., ¶ 17; *see also id.*, ¶ 15 (alleging that efforts to contain the spread of Coronavirus "have led to civil authorities issuing orders closing non-essential business establishments…and mandating social distancing among the population.")). Plaintiff further alleges that its business was closed on March 23, 2020, and that its inability to "operate in the ordinary course of business" has caused it to sustain financial losses and expenses. (*Id.*, ¶¶ 18, 25). These allegations bring its financial losses squarely within the scope of the virus exclusion, which bars coverage for any "loss or damage <u>caused by or resulting from any virus</u>, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (<u>Exhibit A</u>, pg. 149 of 162) (emphasis added).

The Complaint alleges that the clinical features of COVID-19, the disease caused by Coronavirus, include "fatal conditions of severe respiratory failure that requires ventilation and support in an intensive care unit (ICU). Pneumonia has been the most frequent severe manifestation of COVID-19, with symptoms of fever, cough, dyspnea, and bilateral infiltrates on chest imaging." (Compl., ¶ 7). Thus, Coronavirus is clearly a virus that "induces or is capable of inducing physical distress, illness or disease" within the scope of the virus exclusion, which "applies to . . . forms or endorsements that cover business income*, extra expense, rental value or <u>action of civil authority</u>." (<u>Exhibit A</u>, pg. 149 of 162) (emphasis added).

The Louisiana Civil Code provides that contract interpretation "is the determination of the common intent of the parties," and that "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties'

intent." La. Civ. Code arts. 2045-2046. Courts evaluating policy exclusions which, like the virus exclusion, foreclose coverage for losses "caused by" or "resulting from" specified noncovered risks have found the provisions unambiguous and applied them according to their plain meaning. *See, e.g.*, *App v. Zurich Assur. Co. of America*, No. CIV.A. 07-8717, 2008 WL 4399385, at *6 (E.D. La. Sept. 23, 2008); *Burk Prop. Investments, LLC v. Illinois Union Ins. Co.*, No. CV 19-1787, 2020 WL 1864850, at *4 (E.D. La. Apr. 13, 2020); *see also Yount v. Lafayette Ins. Co.*, 4 So. 3d 162, 168-69 (La. App. 4 Cir. 2009). Because the Complaint leaves no doubt that the losses claimed by Plaintiff were "caused by" or "resulted from" Coronavirus, it is not entitled to coverage under the Policy's Civil Authority provision.

> 2.     **Civil Authority Coverage Does Not Apply Because the Complaint Fails to Allege That An Action of Civil Authority Prohibited Access to Its Property**

An "action of civil authority that prohibits access to the described premises" is a fundamental requirement of the Policy's Civil Authority coverage. (Exhibit A, pg. 53 of 162). Courts interpreting civil authority provisions uniformly hold that the phrase "prohibit access" means to "formally forbid," to "totally and completely block," and to "prevent" access to insured premises. *See Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004). A voluntary closure of a business, or a government order that merely limits or restricts access to insured premises, does not trigger coverage. For example, in *730 Bienville Partners, Ltd. v. Assurance Company of America,* when the FAA grounded all commercial aircraft in the days immediately following the September 11 terrorist attacks, a New Orleans hotelier sought civil authority coverage based on the theory that many of its intended guests were unable to travel to its hotels. No. CIV.A. 02-106, 2002 WL 31996014, at *2 (E.D. La. Sept. 30, 2002), *aff'd*, 2003 WL 21145725, 67 F. App'x 248 (5th Cir. 2003). The district court granted summary judgment in favor of the insurer, concluding that access to the hotels was never prohibited by the FAA. *Id*. The Fifth

Circuit Court of Appeals affirmed, observing that the plain meaning of the term "prohibit" is "'to forbid by authority or command.'" *730 Bienville Partners, Ltd.*, 2003 WL 21145725, 67 F. App'x 248 (5th Cir. 2003). The Court held that while the FAA's groundstop order made access to the hotels more difficult for some would-be guests, it did not make it "impossible" because there were other means of traveling to the hotel. *Id.*

A judge of this Court reached a similar conclusion in *Commstop v. Travelers Indem. Co. of Conn.*, No. CIV.A. 11-1257, 2012 WL 1883461 (W.D. La. May 17, 2012). *Commstop* involved a civil authority claim by a convenience store that suffered business losses when a prolonged road work project made it difficult for customers to access its premises, reducing the volume of foot traffic and sales. *Id.* at *1. Reviewing decisions from Louisiana and elsewhere, the Court observed that the phrase "prohibit access" means that access must be "totally and completely prevented, *i.e.*, made impossible," and granted summary judgment for the insurer due to the plaintiff's failure to provide the Court with any "order of civil authority specifically prohibiting access to its premises or otherwise showing access to the business premises was completely blocked." *Id.* at *9; *see also Kean, Miller, Hawthorne, D'Armond McGowan & Jarman, LP v. Nat'l Fire Ins. Co.*, No. CIV.A. 06-770-C, 2007 WL 2489711, at *6 (M.D. La. Aug. 29, 2007) (governor's advisories and recommendations asking and encouraging residents to stay off streets immediately prior to Hurricane Katrina coming ashore did not "prohibit" access to insured premises where plaintiff offered no evidence that its employees or the public were specifically prohibited from traveling to and accessing its business premises).[4]

---

[4] These decisions are in line with authorities around the country addressing when access is "prohibited" under Civil Authority coverage. *See Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (While the order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Backroads Corp. v. Great Northern Ins.*, No. C 03-4615 VRW, 2005 WL 1866397, at *6 (N.D. Cal. Aug. 1, 2005) (similar); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable

Here, the Complaint fails to allege facts from which the Court could infer that access to Plaintiff's Alexandria, Louisiana, properties was totally blocked (*i.e.*, made impossible) by action of a civil authority. The only references to government actions appear in paragraphs 16 and 17 of the Complaint, which mention Governor Edwards' March 11, 2020 declaration of a public health emergency in Louisiana due to COVID-19, and an unspecified "series of subsequent emergency proclamations and orders that closed schools, shuttered non-essential businesses, and ordered Louisiana residents to stay home." (Compl., ¶ 17). However, the Complaint does not identify any proclamation, order or other action that prevented or blocked access to Plaintiff's premises, nor does it allege that Plaintiff's wholesale home décor business was among the categories of businesses it claims were "shuttered" by the Governor. While Plaintiff does allege that "Plaintiff's business was closed on March 23, 2020," (Compl., ¶ 18), its failure to allege that a civil authority ordered it to cease all operations or otherwise prohibited access to its premises is fatal to Plaintiff's claim for civil authority coverage.

Furthermore, the Court may take judicial notice of the fact that Governor Edwards' proclamations did not order Plaintiff's business to close.[5] On March 16, 2020, Governor Edwards issued Proclamation No. JBE 2020-30 (hereinafter "Proclamation 30"),[6] which ordered all "casinos, video poker establishments, movie theaters, bars, bowling alleys, and fitness centers and

---

means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores.); *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335-36 (S.D.N.Y. Mar. 12, 2004) (traffic restrictions imposed after 9/11 attacks in Manhattan made travel in city more difficult, but did not prohibit access to insured's office building); *see also 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003) (similar).

[5] *See Hanberry v. Chrysler Capital*, No. CV 20-246, 2020 WL 2219244, at *2 (E.D. La. May 7, 2020) ("A court may also take judicial notice of certain matters, including public records and government websites."); *In re Katrina Canal Breaches Consol. Litig.*, No. CIV.A.05-4182, 2008 WL 4185869, at *2 (E.D. La. Sept. 8, 2008) (noting that "[t]he Fifth Circuit has determined that courts may take judicial notice of governmental websites").

[6] A true and accurate copy of Proclamation 30 is attached hereto as Exhibit B.

gyms" to "cease operations completely." Proclamation 30 also directed that "all restaurants, cafes, and coffee shops, statewide, shall cease allowing for any on premises consumption of food or beverages." (*Id.*). Proclamation 30 had no effect on other categories of businesses—such as wholesale distributors of consumer goods—to close.

Six days later, on March 22, 2020, Governor Edwards issued Proclamation No. 33 JBE 2020, titled "Additional Measures for COVID-19 Stay At Home." (hereinafter "Proclamation 33").[7] Proclamation 33 was specific in directing that "the following nonessential businesses shall be closed to the public and members: "All places of public amusement…All personal care and grooming businesses…[and] All [shopping] malls", with exceptions for certain stores that have a direct outdoor entrance and provide essential services. (*Id.*, ¶ 4). Proclamation 33 did not order wholesale sellers of any products to close, nor did it prohibit access to the premises of such a business. To the contrary, Paragraph 5 of Proclamation 33 specifically contemplates that businesses like the Plaintiff's shall remain open, noting that any business not deemed essential and not ordered closed "shall reduce operations to continue with minimum contact with members of the public and essential employees, while maintaining social distancing." (*Id.*, ¶ 5). While Proclamation 33 imposed certain restrictions on the manner in which Plaintiff could conduct business at its insured premises in Alexandria, access to its premises was never prohibited.

> **3.    Plaintiff Does Not Allege That Any Action of Civil Authority Was Taken In Response to Direct Physical Loss to Property Other Than Insured Premises From A Covered Cause of Loss**

Even assuming Plaintiff could plead that access to its premises was prohibited, its failure to allege facts supporting the other elements of Civil Authority coverage requires dismissal of its claims. Notably, the Complaint does not allege that any of the Governor's orders or proclamations

---

[7] A true and accurate copy of Proclamation 33 is attached hereto as <u>Exhibit C</u>.

was preceded by direct physical loss or damage to property other than at the insured premises, let alone that any such physical loss or damage was caused by a Covered Cause of Loss. Nor does Plaintiff allege that Governor Edwards issued any order or proclamation in response to (1) dangerous physical conditions resulting from physical loss or damage occurring elsewhere, or (2) the continuation of the Covered Cause of Loss, or (3) to enable a civil authority to have unimpeded access to the damaged property. (*See* Exhibit A, pg. 53 of 162). Instead, Plaintiff alleges, and the Proclamations confirm, that Governor Edwards acted in response to concerns with the COVID-19 pandemic and "fear[] that Louisiana's health care capacity would soon be overrun" by COVID-19 patients. (Compl., ¶ 17). Where, as in this case, a claim for Civil Authority coverage rests on government action taken due to a fear of future harm or to prevent anticipated future loss of life or other harm, courts have held that civil authority coverage does not apply as a matter of law.[8]

**B.    The Policy's Business Income, Extra Expense, Extended Business Income and Delayed Net Income Coverages Do Not Apply as a Matter of Law Because the Complaint Fails to Allege Direct Physical Loss of or Damage to Property at Insured Premises That Was Caused by or Resulted From a Covered Cause of Loss.**

The focal point of the Complaint is Civil Authority coverage. However, Plaintiff states in passing that it is also entitled to payment under the Policy's Business Income, Extra Expense, Extended Business Income, and Delayed Net Income coverages. (Compl., ¶ 25). The existence of "direct physical loss of or damage to" property at insured premises caused by or resulting from a "Covered Cause of Loss" is an essential element of each and every one of these coverages and,

---

[8] *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (observing that there must be a "causal link between prior damage and civil authority action."); *South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, No. CIV.A. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (granting summary judgment for insurer where record revealed that official issued evacuation order not because of property damage that had already occurred, but "based on the anticipated threat of damage to Wharton County."); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *6 (N.D. Ga. Dec. 15, 2004) (granting summary judgment for insurer where FAA order grounding commercial aircraft on 9/11 was issued due to fear of future terrorist attacks, not in response to damage that already occurred in New York, Washington, D.C. or Pennsylvania).

therefore, it must be supported by well pleaded facts.[9] The Complaint in this case alleges that Plaintiff incurred a loss of Business Income and certain expenses due to Coronavirus, which is not a Covered Cause of Loss. Also, the Complaint fails to allege facts to support a plausible claim that Plaintiff's property sustained direct physical loss or damage.

**1.      Plaintiff Alleges That Its Losses Were Caused by Coronavirus, Which Is Not a Covered Cause of Loss**.

Plaintiff alleges in its Complaint that it was unable to use its Alexandria, Louisiana properties beginning on March 23, 2020, and incorrectly equates the alleged loss of use with "direct physical loss" to its property. As explained below, an alleged inability to use insured property does not by itself suffice to constitute "direct physical loss" under the law of Louisiana, and is not covered by the Charter Oak Policy. However, the Court need not reach that issue because the Complaint expressly alleges that Plaintiff's loss of use, business interruption, and resulting financial losses were caused by or resulted from Coronavirus, a risk that is expressly excluded by the Policy.

The virus exclusion applies to all of the coverages Plaintiff refers to in the Complaint that provide coverage for Business Income or Extra Expense. (Exhibit A, pg. 149 of 162). The Complaint alleges that Plaintiff's business closed on March 23, 2020, as a result of the COVID-

---

[9] The Business Income coverage provides insurance for the "actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations'" where (1) the suspension is "caused by direct physical loss of or damage to property at the described premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." (Exhibit A, p. 52 of 162). Similarly, Extra Expense coverage insures against certain expenses incurred by the insured that would not have been incurred "if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." (Id.). Likewise, the Policy's Extended Business Income provision grants coverage for Business Income loss after the end of the "period of restoration," but only if the "Loss of Business Income [was] caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss." (Id., pg. 54 of 162). Finally, the Delayed Net Income Loss coverage covers the actual loss of Net Income sustained by the insured due to the necessary suspension of its operations beyond the Extended Business Income period, but only where the loss of income was "caused by direct physical loss or damage to property at premises which are described in the Declarations" that is "caused by a Covered Cause of Loss." (Id., pg. 55 of 162).

19 pandemic and Governor Edwards' efforts to mitigate the spread of Coronavirus in Louisiana. (Compl., ¶¶ 15-18). It further alleges that Coronavirus causes physical distress, illness, disease and death. (*Id.,* ¶ 7). Plaintiff cannot escape the fact its losses were caused by the COVID-19 virus, and a virus is not a Covered Cause of Loss. The virus exclusion expressly applies to Business Income and Extra Expense coverage. (Exhibit A, p. 149 of 162 ("The exclusion applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority.")) (emphasis added). Thus, as a matter of law, Plaintiff's Complaint premised on the Coronavirus cannot trigger Business Income and Extra Expense coverage.

### 2. The Complaint is Also Deficient In Its Failure to Plead That Plaintiff's Property Experienced Any "Direct Physical Loss of or Damage To" Property At Insured Premises.

Though the virus exclusion disposes of Plaintiff's claims, dismissal of the Complaint is also warranted because of Plaintiff's failure to plead facts indicating there was any "direct physical loss of or damage to" property at insured premises. As a leading treatise explains,

> The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

(10A Couch on Ins. § 148:46 ("*Generally; 'Physical' loss or damage*") (Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, 3d ed. Dec. 2019 Update)).

Consistent with this understanding, the U.S. Fifth Circuit Court of Appeals, applying Louisiana law, has concluded that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for example, the car was undamaged before the collision dented the bumper." *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) (holding that builder's risk policy insuring against "all risks of direct physical loss of or damage to" a vessel

under construction did not apply to the shipbuilder's payment of an arbitration award resulting from errors in its construction of the vessel); *see also In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 831 (E.D. La. 2010) (observing that the term "physical loss or damage" in a property insurance policy connotes a "distinct, demonstrable, physical alteration" of property.); *Mangerchine v. Reaves*, 63 So. 3d 1049, 1056 (La. App. 1 Cir. March 25, 2011) (observing that in the context of a policy insuring against "direct physical loss or damage," the ordinary and generally-accepted meaning of the word "damage" is "actual physical change or injury to the property," and that the term "loss" connotes "destruction, ruin or deprivation" of property).[10]

That the phrase "direct physical loss or damage" connotes a perceptible and physical alteration to insured property is further supported by the Policy's definition of the term "period of restoration," which is part of the Business Income coverage. (Exhibit A, pg. 61 of 162 ("We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'")). The Policy defines the end of the "period of restoration" as the earlier of: (1) "The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality;" or (2) "The date when business is resumed at a new permanent location." (*Id.*). Thus, the Policy plainly contemplates that Business Income coverage is triggered only by a *physical* change to insured property that is capable

---

[10] These definitions of the phrase "direct physical loss" are consistent with those adopted by courts in other jurisdictions. *See, e.g., MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Ct. App. 2d Dist. 2010) ("[t]hat the loss needs to be 'physical,' given the ordinary meaning of the term, is 'widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'"); *Aflac, Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 319 (Ga. App. 2003) (observing that the common meaning of the words "direct physical loss" contemplates "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so").

of being remedied through repair, restoration or replacement. *See Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (reaching same conclusion); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (N.Y. App. Div. 2002) (reaching similar conclusion).

In this case, the Complaint does not allege that any property at the insured locations in Alexandria, Louisiana, suffered any form of distinct, demonstrable, physical alteration from any cause. The Complaint alleges generally that Coronavirus "can live on contaminated objects and surfaces" and can serve as a potential source of transmission between humans who touch those surfaces or objects, (*see* Compl., ¶¶ 11-12), but Plaintiff does <u>not</u> allege that Coronavirus was actually present in or upon any property at premises insured by the Policy.[11] Nor does Plaintiff allege that its property was physically changed or affected in any way. That omission compels dismissal of the Complaint.

Because it cannot allege that its business operations were suspended because of any distinct, physical alteration to its property, Plaintiff attempts to satisfy the Policy's "direct physical loss or damage" requirement by alleging that "it has been unable to use the property for its intended

---

[11] Because Plaintiff does not allege that Coronavirus came into contact with any insured property, the Court need not address whether the presence of Coronavirus on insured property constitutes "direct physical loss of or damage to" such property, and Charter Oak does not seek adjudication of that issue at this time. We note, however, that what the Complaint describes would not constitute direct physical loss or damage as a matter of law. *See Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), tr. at 5, 15 (S.D.N.Y. May 14, 2020) (<u>Exhibit D</u> hereto) (court explaining in case making allegations similar to Plaintiff's allegations that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").

purpose." (Compl., ¶ 24) (emphasis added). This allegation is insufficient to support entitlement to coverage under the Policy. As an initial matter, the text of Proclamation 30 and Proclamation 33 issued by Governor Edwards reveals that Plaintiff—which operated a wholesale home décor enterprise—was <u>not</u> among the categories of businesses directed to cease operations in March 2020.

Even if the Governor had directed Plaintiff to close, however, Louisiana law does not support the proposition that a loss of use of property constitutes "direct physical loss" where, as here, it is not related to some physical alteration of the property that rendered it unfit for its ordinary use or occupancy. The loss of use of property emerged as an issue in *Chinese Drywall*, where Judge Fallon concluded that policyholders whose homes had been become uninhabitable due to the effects of defective Chinese-manufactured drywall had sustained "physical loss" within the meaning of their homeowners policies. *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d at 831. However, the Court's conclusion was based on the fact that the drywall had released sulfur gases that "corroded the silver and copper elements in the homes, often to the point of causing total or partial failure in electrical wiring and devices installed in the homes." *Id.* The Court characterized these impacts as a "distinct, demonstrable, physical alteration" of property within the homes, which satisfied the "physical loss" requirement. *Id*.

This case stands in stark contrast to *Chinese Drywall*, as the Complaint alleges no form of physical change to Plaintiff's property that rendered it unfit for its ordinary use. Further, unlike the homeowners policies at issue in *Chinese Drywall*, the Policy that Charter Oak issued to Plaintiff <u>expressly</u> <u>excludes</u> "loss of use." (<u>Exhibit A</u>, pg. 65 of 162 ("We will not pay for loss or damage caused by or resulting from…b. Delay, <u>loss of use</u> or loss of market.")) (emphasis added). This exclusion is unambiguous, *App*, 2008 WL 4399385, at *6, and Louisiana Civil Code article 2050

requires that the requirement of "direct physical loss or damage" in the Business Income, Extra Expense, Extended Business Income, and Delayed Net Income coverages must be construed in a way that gives the exclusion effect and meaning. *See* La. Civ. Code art. 2050. Construing the phrase "direct physical loss or damage" to encompass a loss of use unaccompanied by a physical alteration of insured property would nullify the "loss of use" exclusion altogether. *See Home Ins. Co. of Illinois v. Nat'l Tea Co.,* 588 So. 2d 361, 364 (La.1991) (observing that, when interpreting any contract, "[a construction that renders a contract virtually nugatory] should be avoided in favor of one that gives the clause effect").

Finally, while no Louisiana court has addressed the issue, courts in many other jurisdictions have held that a loss of use of insured property does not constitute "direct physical loss or damage" in the absence of some physical condition internal to the property that renders it incapable of being used. *See Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1, 3 (N.Y. App. Div. 2002) (Broadway theatre company's inability to hold performances in its theatre due to city's closure of city block due to scaffolding collapse was not "physical loss or damage" to the theatre); *Harry's Cadillac-Pontiac-GMC Truck Co.*, 486 S.E.2d at 251 (finding no direct physical loss sufficient to trigger business interruption coverage where heavy snowstorm made insured premises inaccessible, but caused no property damage); *Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (rejecting insured's argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'"); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmericbuttsh & Assocs., Inc. v. State Auto Ins.*

*Cos.*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *5 (S.D. Miss. Nov. 19, 2007) (where insured was denied access to computer data during power outage, this was not "direct physical loss of or damage to" property); *Herr v. Forghani*, 161 Wash. App. 1037, 2011 WL 1833829, at *7 (2011) (unpublished) (explaining that insured "must show direct physical loss to tangible property," and "alleged loss of use of his property caused by the supposed increased easement use" was not covered); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.").

Here, even if Governor Edwards had ordered Plaintiff's business premises to close—which he did not—that action would not constitute direct physical loss to Plaintiff's property. In the words of *Newman Myers*, it would be something "exogenous to the premises" causing its closure, but it would not be, in the words of the Policy, "direct physical loss of or damage to" property. Having failed to allege the existence of direct physical loss of or damage to property at insured premises caused by or resulting from a Covered Cause of Loss, Plaintiff, as a matter of law, is not entitled to coverage under the Policy's Business Income, Extra Expense, Extended Business Income, or Delayed Net Income Loss coverages. Accordingly, its Breach of Contract cause of action should be dismissed.

### C.   Plaintiff's Bad Faith Claim Should be Dismissed Due to Its Failure to Plead a Viable Claim for Breach of the Insurance Contract.

Plaintiff has alleged an additional cause of action for statutory bad faith. Plaintiff's bad faith count must be dismissed because: (1) under Louisiana law, bad faith claims require a valid

breach of contract count and, as set forth above, none exists here; and (2) Plaintiff has failed to plead the statutorily-required elements to establish any bad faith claim.

Louisiana law recognizes that bad faith claims "'do not stand alone,' but depend upon a 'valid underlying claim.'" *Edwards v. Allstate Prop. & Cas. Co.*, No. CIV.A. 04-2434, 2005 WL 221558, at *3 (E.D. La. Jan. 27, 2005) (*quoting Phillips v. Patterson Ins. Co.*, 813 So. 2d 1191, 1195 (La. App. 3 Cir. 2002)). Thus, "absent a valid, underlying, insurance claim," neither La. R.S. 22:1973 (formerly 22:1220) nor La. R.S. 22:1892 (formerly 22:658) "provide a cause of action against an insurer[.]" *Clausen v. Fidelity & Deposit Co.*, 660 So. 2d 83, 85 (La. App. 1 Cir. 1995); *see also Phillips*, 813 So. 2d at 1195 (statutory bad-faith claims unavailable unless plaintiff has viable breach-of-contract claim); *Abell Corp. v. Northland Ins. Co.*, No. 96-0717, 1996 WL 481072, at *4 (E.D. La. Aug. 23, 1996) (to state viable "bad faith" claim, a plaintiff must establish "existence of insurance coverage" and a "valid, underlying insurance claim"); *Riley v. Transamerica Ins. Group Premier Ins. Co.*, 923 F. Supp. 882, 888 (E.D. La. 1996) (same principle).

As discussed above, Plaintiff has failed to plead facts supporting a plausible claim for payment under the Policy's Business Income, Extra Expense, Civil Authority, Extended Business Income, or Delayed Net Income Loss coverages. Because the Complaint fails to state a viable cause of action for breach of contract, the claim for violation of Louisiana's "bad faith" statutes also fails as a matter of law and should be dismissed. *See Dousay v. Allstate Ins. Co.*, 741 So. 2d 750, 754-755 (La. App. 3 Cir. 1999); *Nguyen v. St. Paul Travelers Inc. Co.*, No. CIV.A. 06-4130, 2007 WL 3275133, at *7 (E.D. La. Nov. 5, 2007).

Dismissal of the Bad Faith claim is further warranted due to Plaintiff's failure to plausibly allege the elements set forth in La. R.S. 22:1973 and La. R.S. 22:1892 to trigger potential bad faith

liability.[12] Both of those statutory provisions require, as a requisite to bad faith liability, that the insurer fail to pay or make an offer to settle a claim within a certain period of time after receipt of "satisfactory proof of loss" of that claim. Under La. R.S. 22:1973(B)(5), that period of time is sixty days; under La. R.S. 22:1892(A)(4), the insurer has thirty days after receipt of a satisfactory proof of loss to make a written offer. The Complaint baldly and cursorily alleges that Defendant violated the applicable statutory provisions by failing to pay Plaintiff's claim "after being provided satisfactory proof of loss by Plaintiff," (Compl., ¶¶ 32, 35), but pleads no facts to support that conclusion. Plaintiff's bare-bones allegations are insufficient to plausibly allege a bad faith claim. *See Vincent v. State Farm Fire & Cas. Co.*, No. CV 19-14078, 2020 WL 2495815, at *5 (E.D. La. May 14, 2020) (dismissing bad faith claim where plaintiff "allege[d] no facts such as whether he submitted a satisfactory proof of loss or when he did so, let alone the length of the delay between his submission and [the insurer's] refusal to remit").

## V.   CONCLUSION

For all of the reasons stated above, Plaintiff Odyssey Imports, Inc. has failed to state any claim upon which relief may be granted. Thus, Charter Oak respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice under Fed. R. Civ. P. 12(b)(6).

---

[12] Plaintiff's bad faith claim also cites to La. C.C. art. 1997 (Compl., ¶¶ 37-39), which simply provides that "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. C.C. art. 1997 speaks only to potential damages that may be recovered and does not create any potential new or additional liability on which to base a standalone cause of action. *See Scottsdale Ins. Co. v. TL Spreader, LLC*, No. 6:15CV2664, 2017 WL 4779575, at *10 n.14 (W.D. La. Oct. 20, 2017) (noting that "this codal article sets forth the measure of damages where an obligor is found to be in 'bad faith'").

Respectfully Submitted:


*/s/Seth A. Schmeeckle*_____
**Seth A. Schmeeckle, La. Bar No. 27076 (T.A.)**
**Nicole M. Babb, La. Bar No. 35032**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990
Facsimile: 504-310-9195
Email:  sschmeeckle@lawla.com
          nbabb@lawla.com

***Attorneys for The Charter Oak Fire Insurance Company***




## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon all counsel of

record through the Court's CM/ECF system on this 8th day of June, 2020.


*/s/ Seth A. Schmeeckle*_____
Seth A. Schmeeckle